Lainee Jeanelle HUBBARD, Administrator of the Estate of Craig H. Curtright, Deceased, Appellant,

v.

Suzie SHANKLE, Appellee.

No. 2–03–192–CV.

Court of Appeals of Texas, Fort Worth.

May 20, 2004.

French & Hamilton and Charles M. Hamilton, Dallas, for Appellant.

Jeffrey C. Irion, Gun Barrel City, for Appellee.

PANEL A: CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

Appellant, Lainee Jeanelle Hubbard, as administrator of her father's estate, appeals the trial court's order granting two

no-evidence motions for summary judgment in favor of appellee, Suzie Shankle. In her sole issue, appellant complains that the trial court erred by granting appellee's first and second motions for summary judgment, by rendering judgment that appellant take nothing, and by overruling appellant's motion for new trial. We affirm.

## FACTS

Appellant, as administrator of Craig Curtright's estate, sued appellee to recover or impress a trust on life insurance proceeds paid to appellee upon the death of Craig Curtright. Curtright and appellee had been dating approximately three months when Curtright died of a heart attack during sexual intercourse with appellee on September 2, 2001.

The couple met via the internet in May 2001. Prior to his death, Curtright told appellee that he intended to remove his ex-wife as beneficiary on his life insurance policy and change the designation to reflect that appellee was the new beneficiary. He asked appellee for her social security number for this purpose. He told her that he was putting the life insurance in her name because he wanted her to have the money and he wanted her to take care of the college expenses of Caty, his two-year-old daughter.

When Curtright died, appellee, as beneficiary, received approximately $110,000 to $120,000 from the insurance policy. She deposited all of the money in her checking account and had spent approximately $45,000 dollars of it on personal expenses at the time of trial. Although she admits that at least some of the money is intended for Caty's college expenses, she asserts that she does not have a legal obligation to give the money to anyone.

Appellant sued appellee first on behalf of the estate, and then later amended her petition to include claims on Caty's behalf under an assignment of claims. Appellee filed two motions for no-evidence summary judgments. The first motion attempted to defeat any claims the estate had asserted against her in appellant's first amended original petition. Appellee's second motion, which was filed after appellant's second amended original petition, addressed claims appellant raised on Caty's behalf. Appellant filed a response to appellee's motion against the estate, and in support of her response she attached appellee's deposition testimony; emails between appellee and the decedent; the police report on the decedent's death; her own affidavit attesting to the fact that her father was very overweight and had a heart condition; the decedent's death certificate; excerpts from a physician assistant's drug reference handbook, a medical dictionary, and a physician's desk reference; and internet research on various prescription drugs.

The trial court granted appellee's motion against the estate, stating in its findings that there were no facts or evidence presented by appellant upon which to base allegations of negligence, wrongful death, breach of contract, promissory estoppel, formation of an express trust, formation of a constructive trust, removal of property, money had and received, undue influence, statutory forfeiture of insurance proceeds, misapplication of trust property, damages, or fraud. The trial court found that the decedent, through his own voluntary efforts, had named appellee as the sole and absolute beneficiary of his life insurance policy. The trial court also found that had appellant desired to do so, he could have created a trust or a will with trust provisions that named his estate or trustee as the beneficiary. Moreover, the court noted that although appellee may have a moral obligation to use the proceeds for Caty's

college education, it is not the equivalent of a legal one.

After the trial court granted appellee's first motion against the estate, appellant then filed a second amended original petition adding the claims on Caty's behalf. In response to these claims, appellee filed a second motion for a no-evidence summary judgment. In appellant's response to this motion, she incorporated by reference her last response and all attachments, the appellee's two motions for summary judgment, the court's file, and appellant's affidavit and all exhibits attached to it. The trial court then granted this motion concerning Caty's claims and concluded that appellant failed to present more than a scintilla of evidence sufficient to create a genuine issue of material fact.

## STANDARD OF REVIEW

■ Under rule of civil procedure 166a(i), after an adequate time for discovery, the party without the burden of proof may, *without presenting evidence,* move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. TEX.R. CIV. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.; Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 207 (Tex.2002). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* TEX.R. CIV. P. 166a(i) & cmt.; *Southwestern Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex.2002).

■ "A no-evidence summary judgment is essentially a pretrial directed verdict," and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. Hon. David Hittner & Lynne Liberato, *No–Evidence Summary Judgments Under the New Rule,* STATE BAR OF TEX. PROF. DEV. PROG., PRACTICING UNDER THE NEW APPELLATE RULES COURSE K (1997). We review the evidence in the light most favorable to the respondent against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Morgan v. Anthony,* 27 S.W.3d 928, 929 (Tex.2000); *Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997); *Connell v. Connell,* 889 S.W.2d 534, 538 (Tex.App.-San Antonio 1994, writ denied). A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. TEX.R. CIV. P. 166a(i); *see also Moore v. K Mart Corp.,* 981 S.W.2d 266, 269 (Tex.App.-San Antonio 1998, pet. denied); *Merrell Dow Pharm., Inc.,* 953 S.W.2d at 711. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharm., Inc.,* 953 S.W.2d at 711.

## DISCUSSION

Appellant's first motion for no-evidence summary judgment attacked appellant's causes of action for negligence (survival action), wrongful death, breach of contract, promissory estoppel, fraud, misapplication of trust property, money had and received, fraud and undue influence, imposition of a constructive trust; statutory forfeiture of insurance proceeds and punitive damages

and attorneys fees.[1] Appellee's second motion for no-evidence summary judgment attacked appellant's causes of action for breach of contract, promissory estoppel, fraud and constructive fraud, breach of fiduciary duty and misapplication of trust property, money had and received, imposition of a constructive trust, and punitive damages and attorneys fees. On appeal, appellant argues that the trial court erred by granting both of appellee's motions for summary judgment, by rendering judgment that appellant take nothing, and by overruling appellant's motion for new trial.

As we noted, to prevail over appellee's no-evidence motions for summary judgment, appellant needed to have presented more than a scintilla of evidence in support of each claim she made. *See Moore*, 981 S.W.2d at 269. Appellant contends that she presented evidence raising genuine issues of material fact on the following causes of action: imposition of a constructive or resulting trust, promissory estoppel, breach of contract, fraud and constructive fraud, breach of fiduciary duties and misapplication of trust property, money had and received, quasi-contract, and unjust enrichment. First, we will address appellant's breach of contract claim.

### Breach of Contract

Under Texas law, the requirements of a valid contract are: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Labor Ready Cent. III, L.P. v. Gonzalez*, 64 S.W.3d 519, 522 (Tex.App.-Corpus Christi 2001, no pet.). Consideration is also a fundamental ele-

ment of a valid contract. *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 408–09 (Tex. 1997). The elements of written and oral contracts are the same and must be present for a contract to be binding. *Bank of El Paso v. T.O. Stanley Boot Co.*, 809 S.W.2d 279, 284 (Tex.App.-El Paso 1991), *aff'd in part, rev'd in part on other grounds*, 847 S.W.2d 218 (Tex.1992).

Appellant argues that Caty is a third-party beneficiary to an agreement between the decedent and appellee. Appellant contends that appellee expressly or implicitly promised to hold the insurance proceeds for the benefit of Caty's education and that appellee breached that promise to Caty's detriment. Moreover, appellant asserts that the decedent relied upon appellee's promise to his detriment.

Appellant failed to present evidence to raise a fact issue as to whether there was a valid contract between the decedent and appellee. Appellee testified in her deposition that the decedent had stated that he wanted appellee's social security number so that he could name her as the beneficiary of his life insurance policy. He said he was changing the beneficiary designation because he wanted her to have the money and to take care of Caty's college. He never told her what the policy was worth, nor did he specify how much of the proceeds should go to Caty or appellee in the event of his death. Appellee did not know whether the decedent had actually made her the beneficiary of the life insurance policy until after his death.

There can be no valid contract based upon these facts because there was no bargained-for exchange. First, we cannot discern that the decedent made an offer. Regardless, there was clearly no

1. The first no-evidence motion for summary judgment relates to appellant's first amended original petition, whereas the second motion relates to appellant's second amended original petition.

acceptance on the part of appellee, nor was there any consideration given in exchange for appellee being named beneficiary. The evidence shows only that the decedent told appellee that it was his intention to change the beneficiary designation on his life insurance policy and that she did not object to being named beneficiary. Even while viewing all the evidence presented in the light most favorable to the appellant, we hold that she did not present any evidence that raises a question of fact on any of the elements of a valid contract.[2]

### Promissory Estoppel

The elements of promissory estoppel are: (1) a promise, (2) foreseeability of reliance on the promise by the promisor, and (3) substantial detrimental reliance by the promisee. *See English v. Fischer,* 660 S.W.2d 521, 524 (Tex.1983); *Gilmartin v. KVTV,* 985 S.W.2d 553, 558 (Tex.App.-San Antonio 1998, no pet.) Appellant argues that promissory estoppel is a substitute for consideration, and allows for the enforcement of an otherwise unenforceable contract due to lack of consideration. However, appellant failed to raise a question of fact as to whether promissory estoppel could apply because she failed to show that the decedent relied to his detriment upon any promise by appellee on the part of appellee regarding the beneficiary designation.

Further, appellant's responsive evidence does not establish that the decedent relied upon any promise by appellee. Our review of the record reveals that the decedent voluntarily chose to change the designation on his life insurance policy without

exacting any promise from appellee in exchange. The decedent's wish that appellee have the money and take care of Caty's college are merely expressions of desire on the part of the decedent. According to the evidence presented, the decedent meant to designate appellee as the beneficiary before he mentioned his desire that appellee have the money and take care of Caty's college. Thus, appellant presented no evidence to raise a question of fact on whether a promise existed or whether the decedent relied upon any promise in exchange for naming appellee as beneficiary.

Appellant also contends that two-year-old Caty relied upon appellee's alleged promise to keep the funds in trust to her detriment. In addition to the fact that there is no evidence of such a promise, appellant presented no evidence to show that Caty (or her representative) knew of the decedent's wishes or acted in reliance upon any representation by appellee. Accordingly, even while viewing all the evidence presented in the light most favorable to the appellant, we hold that she did not present any evidence that raises a question of fact as to whether the elements of promissory estoppel existed in lieu of consideration for a valid contract.

### Actual and Constructive Fraud

Appellant also claims fraud on the part of appellee. The elements of actual fraud are: (1) that a false, material representation was made; (2) that was either known to be false when made or was made without knowledge of its truth; (3) that was intended to be acted upon; (4)

---

**2.** We note that even if the alleged agreement met all the requirements of a valid contract, an agreement which is not to be performed within one year from the date of making the agreement is not enforceable unless the promise or agreement, or a memorandum of it, is: (1) in writing and (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him. Tex. Bus. & Com.Code Ann. § 26.01(a)(1),(2), (b)(6) (Vernon 2002). Here, there is no such writing so the agreement would not be enforceable under the statute of frauds.

that was relied upon; and (5) that caused injury. *See Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex.1998); *Gilmartin,* 985 S.W.2d at 558. Appellant presented no evidence to raise an issue of fact on whether appellee knowingly made false representations to the decedent in order to induce him to change the beneficiary designation. The record shows that the decedent told appellee that he intended to change the beneficiary designation to reflect her name. According to the evidence, his decision to change the name was not based upon any false representation on the part of appellee, nor did he exact a promise from her in exchange for naming her the beneficiary.

Appellant contends that appellee deceived the decedent by promising to use the money for Caty's college. However, the responsive evidence in the record does not reveal any such deception on the part of appellee. Our review of the record reveals only that the decedent made a general statement indicating his desire that the money was for appellee and for Caty's college expenses. Moreover, no evidence exists to raise a fact question regarding reliance on the part of the decedent. Absent evidence of a false, material representation, relied upon by the decedent, which induced him to change the beneficiary designation, appellant has failed to raise a genuine question of material fact regarding the fraud claim.

 Constructive fraud is the breach of a legal or equitable duty that the law declares fraudulent because it violates a fiduciary relationship. *Archer v. Griffith,* 390 S.W.2d 735, 740 (Tex.1964). It does not require an intent to defraud. *Jean v. Tyson–Jean,* 118 S.W.3d 1, 9 (Tex. App.-Houston [14th Dist.] 2003, pet. denied); *Carnes v. Meador,* 533 S.W.2d 365, 372 (Tex.Civ.App.-Dallas 1976, writ ref'd

n.r.e.) (op. on reh'g). An informal fiduciary duty may arise from a moral, social, domestic or purely personal relationship of trust and confidence, generally called a confidential relationship. *Assoc. Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 287 (Tex.1998). The relationship must exist prior to, and apart from, the agreement that is the basis of the suit. *Id.* at 288. In other words, there must be a preexisting special relationship of trust and confidence that is betrayed in later dealings. *Cathey v. Meyer,* 115 S.W.3d 644, 669 (Tex.App.-Waco 2003, no pet.).

 Here, appellee and the decedent were clearly involved in a romantic relationship. Although the relationship between a husband and wife is ordinarily a fiduciary relationship, appellant failed to present any evidence that raised a fact issue on whether a fiduciary relationship existed between the decedent and appellee. *See Bohn v. Bohn,* 420 S.W.2d 165, 170 (Tex.Civ.App.-Houston [1st Dist.] 1967, writ dism'd). Additionally, appellant presented no evidence to raise a fact issue on whether appellee breached a legal or equitable duty owed to the decedent. Appellant asserts that appellee promised to act as trustee for Caty regarding the proceeds of the life insurance policy. However, we see no evidence that appellee promised anything to the decedent. Accordingly, even while viewing all the evidence presented in the light most favorable to the appellant, we hold that she did not present any evidence that raises a question of fact regarding her claim of constructive fraud.

### Express Trust

 Appellant further argues that the decedent established an express education trust for the benefit of his daughter Caty. There are no particular words required to create a trust if there exists reasonable certainty as to the intended

property, object, and beneficiary. *Tomlinson v. Tomlinson,* 960 S.W.2d 337, 338 (Tex.App.-Corpus Christi 1997, pet. denied); *Fred Rizk Constr. Co. v. Cousins Mortgage & Equity Inv.,* 627 S.W.2d 753, 755 (Tex.App.-Houston [1st Dist.] 1981, writ ref'd n.r.e.). To create a trust, the beneficiary must be identified with certainty. *Unthank v. Rippstein,* 386 S.W.2d 134, 136 (Tex.1964); *Spiritas v. Robinowitz,* 544 S.W.2d 710, 715 (Tex.Civ.App.-Dallas 1976, writ ref'd n.r.e.). The Texas Trust Code provides that an express trust means "a fiduciary relationship with respect to property which arises as a manifestation by the settlor of an intention to create the relationship and which subjects the person holding title to the property to equitable duties to deal with the property for the benefit of another person." TEX. PROP.CODE ANN. § 111.004(4) (Vernon Supp.2004). A trust may be created in five ways:

(1) a property owner's declaration that the owner holds the property as trustee for another person;

(2) a property owner's inter vivos transfer of the property to another person as trustee for the transferor or a third person;

(3) a property owner's testamentary transfer to another person as trustee for a third person;

(4) an appointment under a power of appointment to another person as trustee for the donee of the power or for a third person; or

(5) a promise to another person whose rights under the promise are to be held in trust for a third person.

*Id.* § 112.001 (Vernon 1995). We look to the settlor's intent to determine whether a trust was created. *See id.* § 112.002 ("A trust is created only if the settlor manifests an intention to create a trust."); *Barrientos v. Nava,* 94 S.W.3d 270, 280 (Tex.

App.-Houston [14th Dist.] 2002, no pet.). The failure of an express trust creates a resulting trust in favor of the settlor. *Cornyn v. Fifty–Two Members of Schoppa Family,* 70 S.W.3d 895, 900 (Tex.App.-Amarillo 2001, no pet.). A court cannot impose a trust where the parties have contemplated another relationship. *Chapman Children's Trust v. Porter & Hedges, L.L.P.,* 32 S.W.3d 429, 438 (Tex.App.-Houston [14th Dist.] 2000, pet. denied); *Spiritas,* 544 S.W.2d at 715.

■■■ Appellant claims the decedent formed an express trust when he told appellee that he was designating her as the beneficiary of his life insurance policy because he wanted her to have the money and to take care of Caty's college expenses. Although life insurance proceeds are appropriate trust property, the settlor must manifest the intention to create a trust from the proceeds of the policy. *See* TEX. PROP.CODE ANN. § 111.004(12); *Barrientos,* 94 S.W.3d at 280. Additionally, the beneficiary must be identified with reasonable certainty. *See Unthank,* 386 S.W.2d at 136; *Spiritas,* 544 S.W.2d at 715.

Here, appellant did not present any evidence to raise a fact issue regarding the decedent's intent to create a trust. Assuming *arguendo* that the vague statement by the decedent could be construed to infer that he may have intended a trust, no trust beneficiary can be reasonably identified from the evidence presented at trial because the decedent stated that he wanted appellee to both have the money and to provide for Caty's college. Under these statements, appellee is as likely an intended beneficiary as Caty. The decedent's intent to benefit appellee directly, rather than to create a trust in favor of Caty, is also evidenced by the fact that the decedent changed the beneficiary designation

to appellee individually, not as trustee for Caty, which he could easily have done.

Appellant argues that the case of *Brault v. Bigham* is analogous to the case at bar. 493 S.W.2d 576 (Tex.Civ.App.-Waco 1973, writ ref'd n.r.e.) We disagree. In *Brault*, the trial court imposed a trust on life insurance proceeds held by the named beneficiary under an insurance policy for the benefit of four children and removed the beneficiary as trustee. *Id.* at 578–79. The appellate court affirmed, stating that a trust may be impressed upon life insurance proceeds that are in the hands of a named beneficiary, and proof of the trust may be made by parol evidence. *Id.* at 579. However, the *Brault* opinion does not indicate that the beneficiaries complained on appeal about the decedent's lack of intent to form a trust in the first place, as is the case here. The holding in *Brault* is confined to issues regarding the removal of a trustee. Therefore, we distinguish *Brault* from the case at bar because we hold that, here, appellant presented no evidence raising a fact issue on the decedent's intent to create a trust.

### Constructive and Resulting Trusts

Appellant argues that in the event that the express trust fails due to vagueness or uncertainty, the proceeds of the life insurance policy should revert to the estate pursuant to a constructive or resulting trust. Although they are often confused, resulting and constructive trusts are distinguishable. *Tolle v. Sawtelle*, 246 S.W.2d 916, 918 (Tex.Civ.App.-Eastland 1952, writ ref'd).

■■■■■ A constructive trust is an equitable remedy created by the courts to prevent unjust enrichment. *Medford v. Medford*, 68 S.W.3d 242, 248 (Tex.App.-Fort Worth 2002, no pet.). To establish that a constructive trust exists, the proponent must prove (1) breach of a special trust,

fiduciary relationship, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res. *Mowbray v. Avery*, 76 S.W.3d 663, 681 n. 27 (Tex.App.-Corpus Christi 2002, pet. denied). The court will impose a constructive trust as an equitable remedy where there is a confidential relationship between a grantor and a grantee, and the grantor relies on the oral promise of the grantee to reconvey the property. *Fitz–Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256, 262–63 (Tex.1951); *In re Marriage of Braddock*, 64 S.W.3d 581, 586 (Tex.App.-Texarkana 2001, no pet.). For example, because it is unconscionable for one who caused the death of another to profit from the act by inheriting from the victim, the court will impose a constructive trust on the proceeds. *See Parks v. Dumas*, 321 S.W.2d 653, 655 (Tex.Civ.App.-Fort Worth 1959, no writ).

■■■■■ While the form of a constructive trust is practically without limit, its existence depends upon the circumstances. *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex.1980); *Simmons v. Wilson*, 216 S.W.2d 847, 849 (Tex.Civ.App.-Waco 1949, no writ). Whether a constructive trust should be imposed at all is within the discretion of the trial court. *Schneider v. Schneider*, 5 S.W.3d 925, 929 (Tex.App.-Austin 1999, no pet.). The proponent of a constructive trust must strictly prove the elements necessary for the imposition of the trust. *See, e.g., Ginther v. Taub*, 675 S.W.2d 724, 725 (Tex.1984) (requiring strict proof of unfair conduct or unjust enrichment on the part of the wrongdoer).

■■■■■ Here, appellant did not present any evidence to raise a fact issue on whether appellee breached any duty to the decedent. Moreover, she did not present any evidence to raise a fact issue on whether appellee was unjustly enriched or

not entitled to the proceeds. The decedent clearly manifested his intent that appellee have the money by telling her that the money was for her and by changing the designation on his life insurance policy to reflect that she was the sole beneficiary without indicating that she was a trustee. Additionally, we have already held that appellant failed to raise a fact issue on either actual or constructive fraud on the part of appellee. To impose a constructive trust, a breach of a duty or actual or constructive fraud must be present. *Braddock*, 64 S.W.3d at 587; *Exploration Co. v. Vega Oil & Gas Co.*, 843 S.W.2d 123, 127 (Tex.App.-Houston [14th Dist.] 1992, writ denied); *Rogers v. Winn*, 329 S.W.2d 319, 324 (Tex.Civ.App.-San Antonio 1959, writ ref'd n.r.e.). Accordingly, even while viewing all the evidence presented in the light most favorable to the appellant, we hold that she did not present any evidence that raises a question of fact regarding her claim for the imposition of a constructive trust.

 A resulting trust is an equitable remedy primarily involving consideration. *In re Marriage of Loftis*, 40 S.W.3d 160, 165 (Tex.App.-Texarkana 2001, no pet.). The doctrine of a resulting trust looks to valuable consideration, not legal title, as the deciding factor on equitable title or interest from a transaction. *Id.* Both resulting and constructive trusts are implied by operation of law to prevent unjust enrichment. *Id.; Davis v. Sheerin*, 754 S.W.2d 375, 387 (Tex.App.-Houston [1st Dist.] 1988, writ denied).

 When title to property is taken in the name of someone other than the person who advances the purchase price, a resulting trust is created in favor of the payor. *Nolana Dev. Ass'n v. Corsi*, 682 S.W.2d 246, 250 (Tex.1984); *Cohrs v. Scott*, 161 Tex. 111, 338 S.W.2d 127, 130 (Tex. 1960). It is an "intent trust" employed when trust property had been used for a special purpose which has terminated or become frustrated so that the law implies a trust for the equitable owner of the property. *Tricentrol Oil Trading, Inc. v. Annesley*, 809 S.W.2d 218, 220 (Tex.1991). Generally, the law is suspicious of resulting trusts, and consequently, a heavy burden of proof is placed on the party attempting to establish the existence of one. *See Equitable Trust Co. v. Roland*, 721 S.W.2d 530, 533 (Tex.App.-Corpus Christi 1986, writ ref'd n.r.e); *Savell v. Savell*, 837 S.W.2d 836, 839 (Tex.App.-Houston [14th Dist.] 1992, writ denied).

Here, we determined that appellant failed to produce evidence to raise a fact issue on whether an express trust existed or whether title to property was taken in the name of someone other that the person who paid valuable consideration. Accordingly, even while viewing all the evidence presented in the light most favorable to appellant, we hold that she did not present any evidence that raises a question of fact regarding her claim for the imposition of a resulting trust. Additionally, under her arguments for the formation of a trust appellant argued that appellee had misapplied trust funds. In light of the fact that we hold that no evidence was presented to raise a fact issue on whether any type of trust existed, appellant's claim of misapplication of trust property also fails.

### Money Had and Received

Appellant states in her brief that issues of material fact exist regarding her claim of money had and received. She asserts, in one sentence, that all she needed to prove in support of this claim was that appellee had money that in equity and good conscience belonged to decedent's estate or Caty. We infer by appellant's statement that she believes that she presented evidence in support of this argument. We disagree. Accordingly, even while viewing all the evidence presented in the light most favorable to the appellant, we hold that she

did not present any evidence that raises a question of fact regarding her contention that appellee had any money that belonged to anyone other than herself.

## Unjust Enrichment and Quasi–Contract

 Appellant argues that issues of material fact exist regarding her claims of unjust enrichment and quasi-contract. These equitable doctrines allow for recovery of damages to prevent a party from obtaining a benefit from another by fraud, duress, unjust enrichment, or because of an undue advantage. *See Fortune Prod. Co., v. Conoco, Inc.,* 52 S.W.3d 671, 684 (Tex.2000); *see also Heldenfels Bros., Inc. v. City of Corpus Christi,* 832 S.W.2d 39, 41 (Tex.1992). As we have previously noted, appellant presented no evidence to raise a fact issue on whether appellee possessed the proceeds of the life insurance policy wrongfully, through fraud or because of any other unfair advantage. Moreover, appellant presented no evidence to raise a fact issue on whether the funds belong to anyone else other than appellee. Therefore, even while viewing all the evidence presented in the light most favorable to appellant, we hold that she failed to present any evidence that raises a question of fact regarding her claims of unjust enrichment or quasi-contract.

We hold that the trial court did not err by granting appellee's motions for no-evidence summary judgments because appellant failed to produce evidence sufficient to create a genuine issue of material fact on any of her claims. We overrule appellant's sole issue.

## CONCLUSION

Having overruled appellant's sole issue, we affirm the judgment of the trial court.