COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-08-356-CV

 

 

GARY EARL WALKER                                                           APPELLANT

 

                                                   V.

 

SOUTHWEST BASKETBALL, LLC                                             APPELLEES

AND NBDL FORT WORTH, LLC

                                              ------------

 

         FROM COUNTY
COURT AT LAW NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

Appellant Gary Earl Walker appeals a take-nothing
judgment in favor of appellees Southwest Basketball, LLC (ASouthwest@) and
NBDL Fort Worth, LLC (ANBDL@). We
affirm.








NBDL and Southwest planned to place an NBA
Development League basketball franchise, the Fort Worth Flyers, in Fort
Worth.  The Fort Worth Flyers were to be
operated by NBDL which was, in turn, controlled by Southwest.  Southwest owned eighty percent of NBDL.  David Kahn founded Southwest, and is the sole
manager of both Southwest and NBDL.

By September of 2005, Walker had made investments
in Southwest totaling $150,000.  In
August 2006, Walker agreed to invest an additional $75,000 in NBDL following a
conference call with Kahn and Tim Berry, of N3 Texas Hoops, LLC (AN3"),
during which the parties discussed financial and marketing problems NBDL was
experiencing in the Fort Worth market. 
NBDL continued to experience a lack of progress in the Fort Worth
market, and another conference call was held during which Walker requested that
his August 2006 investment be returned. 
Kahn promised he would do everything he could to return Walker=s
investment. 

In December 2006, Southwest was in the process of
bringing in a new investor who planned to invest $1,400,000 in Southwest, a
portion of which Southwest intended to invest in NBDL.  After preparing an amended operating
agreement to accommodate the new investor, Kahn emailed a copy of the proposed
agreement to Walker for execution.  On or
before December 14, 2006, the following email exchange ensued: 

Email from Khan to Walker:








[G]ary, if you haven=t
already, please send in the signed signature page from the document distributed
to [Southwest] investors on 11/30.  [W]e=re
aiming to close today. . . .

Reply from Walker to Khan:   

Please send in writing confirmation of our
conversation, that Tim [N3] and I will get our money back by [the] end of [the]
month. Then I will find the email tomorrow and execute by [the] end of [the]
day.

Response from Khan to Walker:

Confirmed. Please send the signed signature page
to Lainie Dillon at 503-220-2480. We should be able to send checks to you and
Tim [N3] within 48 hours of the close.

Walker eventually signed the amended operating agreement and the new
investor was brought in.

In January 2007, NBDL informed Walker that before
it would return Walker=s August 2006 investment, he
would need to sign an LLC Unit Purchase Agreement and Release of Claims, which
included an offer by NBDL to buy back the additional units of ownership in NBDL
that Walker purchased in August 2006. 
Walker, however, rejected the offer by making a counter-offer which
changed the language in the release of claims. 
NBDL would not agree to the changes and refused to return Walker=s
investment.








Walker sued appellees for breach of
contract.  After a bench trial between
Kahn and Walker, the trial court entered a judgment for appellees that Walker
take nothing.  Walker then filed a motion
for new trial, which was denied by the trial court.  The trial court entered findings of fact and
conclusions of law.  Walker filed this
appeal.             

Walker challenges the legal and factual sufficiency
of the trial court=s finding that no contract was
formed between Walker and appellees whereby appellees would return Walker=s August
2006 investment.  Walker argues that the
evidence conclusively establishes that there was such a contract, and, in the
alternative, that the trial court=s
failure to find such a contract is against the overwhelming weight of evidence
to the contrary. 

Findings of fact entered in a case tried to the
court have the same force and dignity as a jury=s
answers to jury questions.[2]
 The trial court=s
findings of fact are reviewable for legal and factual sufficiency of the
evidence to support them by the same standards that are applied in reviewing
evidence supporting a jury=s
answer.[3]








If a party is attacking the legal sufficiency of
an adverse finding on which the party had the burden of proof, and there is no
evidence to support the finding, we review all the evidence to determine
whether the contrary proposition is established as a matter of law.[4]  When reviewing an assertion that the evidence
is factually insufficient to support an adverse finding, we set aside the
finding only if, after considering and weighing all of the evidence in the
record pertinent to that finding, we determine that the finding is so contrary
to the overwhelming weight of all the evidence, that the answer should be set
aside and a new trial ordered.[5]


Walker contends that the December 2006 email
exchange between him and Kahn conclusively establishes a written agreement on
the part of NBDL to reimburse Walker for his August 2006 investment of $75,000
in exchange for his execution of the amended operating agreement.  There was testimony offered at trial,
however, showing that NBDL did not understand Walker=s email
to mean that he was offering to exchange his signature on the amended operating
agreement for return of his August 2006 investment.  In fact, at trial, Kahn flatly rejected this
interpretation of the email exchange:

Q.     Did
you understand Mr. Walker=s e-mail to mean that you were
agreeing to exchange his signature on the Amended Operating Agreement in
exchange for B B in
exchange for [Southwest] paying Mr. Walker $75,000?








A.     Absolutely
not.

Kahn further testified that at the time of the December 2006 email
exchange with Walker, the parties understood that to unwind the August 2006
investment, the purchase agreement and release of claims would need to be
executed.  He said that when he wrote in
his email to Walker that, AWe
should be able to send checks to you and Tim within 48 hours of the close,@ he was
simply confirming that Walker=s
execution of the amended operating agreement would put NBDL in a financial
position to unwind that investment after the release of claims was
executed.  Thus, the evidence does not
conclusively establish an acceptance of Walker=s offer,
or a meeting of the minds, to support either a written or oral contract.[6]  








Because the evidence does not conclusively
establish the elements necessary for the trial court to find a contract between
Walker and appellees for the return of Walker=s August
2006 investment in exchange for his signature on the amended operating
agreement, we overrule appellant=s legal
sufficiency challenge.  Moreover, after
reviewing all of the evidence in the record relevant to the trial court=s
finding that no contract was formed between Walker and appellees, we cannot say
that the trial court=s finding is against the great
weight of the evidence. 

We overrule Walker=s four
issues.  The trial court=s
judgment is affirmed. 

 

PER CURIAM

PANEL: 
CAYCE, C.J.; MCCOY and MEIER, JJ.

 

DELIVERED:  December 23, 2009   











[1]See Tex. R. App. P. 47.4.





[2]Anderson v. City of Seven
Points,
806 S.W.2d 791, 794 (Tex. 1991).





[3]Ortiz v. Jones, 917 S.W.2d 770, 772
(Tex. 1996); Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994). 





[4]Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241
(Tex. 2001); Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex.
1989).





[5]Pool v. Ford Motor Co., 715 S.W.2d 629, 635
(Tex. 1986) (op. on reh=g); Garza v. Alviar,
395 S.W.2d 821, 823 (Tex. 1965); In re King=s Estate, 150 Tex. 662, 664_65, 244 S.W.2d 660, 661 (1951).





[6]See generally Hubbard v.
Shankle,
138 S.W.3d 474, 481 (Tex. App.CFort Worth 2004, pet. denied) (listing elements
for valid contract).