

# IN THE
# TENTH COURT OF APPEALS

### No. 10-11-00333-CV

DONNA MELTON,

                                    **Appellant**

 v.

BRANDY JOHNSTON,

                                    **Appellee**

### From the 40th District Court
### Ellis County, Texas
### Trial Court No. 82717

## MEMORANDUM  OPINION

Donna Melton sued Brandy Johnston to establish a constructive trust when Johnston did not give Melton the proceeds to Melton's ex-husband's life insurance policy. Johnston moved for summary judgment which the trial court granted. We reverse and remand to the trial court for further proceedings.

### BACKGROUND

Melton and her husband, Lonnie McGough, took in Johnston when she was a teenager. After Johnston graduated from high school and moved away, she maintained

a relationship with Melton and McGough.

Melton and McGough eventually divorced. McGough had purchased a life insurance policy and before the divorce changed the beneficiary from Melton to Johnston. Melton approved of the change. McGough and Johnston agreed that proceeds of the policy would be used for Melton's behalf. McGough ultimately committed suicide and the proceeds of the policy were paid to Johnston. Johnston gave Melton $25,000 but refused to give her any more of the policy proceeds of $229,997.93. Melton sued.

## SUMMARY JUDGMENT

As Johnston recognized in her motion for summary judgment, Melton asserted four claims in her live pleadings: namely, 1) unjust enrichment; 2) breach of fiduciary duty; 3) fraud; and 4) constructive trust. Johnston moved for summary judgment on all four grounds on the basis that as a matter of law, the Insurance Code provided that Johnston was the only properly designated beneficiary of the life insurance proceeds and accordingly, was entitled to all those proceeds. Melton responded that she was entitled to a constructive trust on the proceeds of the policy.

The trial court granted Johnston's motion in its entirety. On appeal, as in her response, Melton, in her first two issues, only asserts error in the granting of the summary judgment as it relates to her claim for the imposition of a constructive trust. Accordingly, we need only focus on this single claim and determine if Johnston proved

as a matter of law that she was entitled to judgment that Melton take nothing based on her claim of entitlement to a constructive trust.

We note that the motion for summary judgment filed by Johnston is not a no-evidence summary judgment motion. After careful review of the motion, we believe it would be improper to characterize the motion as anything other than a traditional motion for summary judgment. The summary judgment motion was based on the principal that as the designated beneficiary of the insurance policy, Johnston was, as a matter of law, entitled to the proceeds thereof. To the extent of her argument, Johnston is correct as between herself and the insurance company. Melton could not have forced the insurance carrier to pay the policy proceeds in any manner other than as it did. *See Gray v. Nash*, 259 S.W.3d 286, 290 (Tex. App.—Fort Worth 2008, pet. denied) (pursuant to contract with insurance company, designated beneficiary entitled to the proceeds). Melton, however, did not sue the carrier; she sued Johnston to enforce the agreement Johnston acknowledges she had with the deceased insured and Melton.

In her effort to prove she was entitled to the policy proceeds as a matter of law, it was necessary for Johnston to establish Melton was not entitled to the proceeds under any theory pled by Melton. While, based on the motion and briefing, Johnston appears to believe the burden was on Melton to prove Melton's prima facie claim, such is not the case because this was a traditional motion for summary judgment and Melton had no burden to prove her claim. *See* TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690

S.W.2d 546, 548 (Tex. 1985) ("The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.").

Nevertheless, Melton rose to the challenge and presented some evidence sufficient to establish each element of a constructive trust.

A constructive trust is an equitable remedy created by the courts to prevent unjust enrichment. *Hubbard v. Shankle*, 138 S.W.3d 474, 485 (Tex. App.—Fort Worth 2004, pet. denied); *Medford v. Medford*, 68 S.W.3d 242, 248 (Tex. App.—Fort Worth 2002, no pet.). To establish that a constructive trust exists, the proponent must prove (1) breach of a special trust, fiduciary relationship, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res. *Hubbard*, 138 S.W.3d at 485; *Mowbray v. Avery*, 76 S.W.3d 663, 681 n.27 (Tex. App.—Corpus Christi 2002, pet. denied).

In reviewing Melton's evidence, we note that Johnston objected to portions of the affidavit of Melton. The trial court sustained those objections and on appeal, Melton asserts in her third issue that the trial court erred in sustaining those objections. Under some circumstances, it may be necessary for us to rule on the trial court's evidentiary ruling to determine if the evidence objected to was properly excluded from the trial court's consideration by having sustained the objections thereto. We need not do so in this proceeding. For even without Melton's affidavit, there is far more than a scintilla of

evidence of each of the elements necessary to create and impose a constructive trust on the proceeds of the life insurance policy; and this evidence is available by solely looking to Johnston's deposition excerpts and exhibits filed by Melton with her response to Johnston's motion.

## MELTON'S EVIDENCE

At her deposition, Johnston testified that she moved in with Melton and McGough when she was 15-1/2 and lived with them until she graduated from high school. She referred to Melton and McGough as "Aunt Donna" and "Uncle Lonnie."[1] When Johnston moved to Dallas, she continued to maintain her relationship with Melton and McGough.

Johnston discussed the life insurance policy, the subject of the underlying suit, with McGough on more than one occasion and agreed to set up an account for Melton. Johnston told Melton she was going to set up an account in both her name and Melton's name for Melton's benefit. Johnston also told Melton that she was supposed to manage the money that had been gifted to her by McGough and that Melton would get regular quarterly statements so that she could watch the money grow. Johnston stated she would help manage the account because Melton had some medical and mental issues. Johnston also informed Melton that it was her role to protect Melton.

Johnston also stated at her deposition that she agreed with McGough to give

---

[1] Johnston is actually the daughter of Melton's first husband's sister: a niece by marriage.

Melton $50,000. Johnston gave Melton $25,000 and had agreed to give her $25,000 the next year; but Johnston did not give her the remaining $25,000.

Johnston also agreed at her deposition with statements she made to Melton through an email. Johnston told Melton that even if McGough had not committed suicide, Johnston always said she would take care of Melton when Melton was old. Johnston told Melton that she knew Melton trusted her and that she trusted Melton. Johnston agreed that there was a relationship of trust and that both Melton and McGough relied on that trust. Johnston stated in the email that Johnston's job was to protect Melton, Melton's heart, and Melton's future.

Johnston relayed the agreement with McGough in the email to Melton. She stated that McGough wanted her to use the money to take care of Melton long-term. Johnston agreed during her deposition that this was part of her agreement with McGough. She also told Melton in the email that she was to invest the money as if it were a 401k and make sure it earned the maximum return so that when Melton was ready to retire, it would be Melton's money. Again, Johnston agreed during her deposition that this was the agreement she had with McGough. Johnston told Melton in the email that McGough wanted the proceeds set up this way because he knew he was the reason for Melton losing her other 401k accounts. Johnston also told Melton that Johnston had no intention of spending any of the money at that time and she would continue to manage the 401k gifted to Melton by McGough's death.

Johnston admitted at her deposition, however, that she never told McGough she would not do what she had agreed to do for Melton; she never set up an account in Melton's name or in both of their names; and she never told Melton how much the total life insurance proceeds were. When Melton asked for a statement to know where the money was, Johnston would not provide it to her.

As evidence of the amount of the policy proceeds paid to Johnston, Melton attached to her response to Johnston's motion for summary judgment a letter from American General Life Companies detailing the face amount of the life insurance proceeds and the total amount payable to Johnston.

Because the evidence attached to Melton's response to Johnston's motion for summary judgment is some evidence of each element of a constructive trust, we find there was a genuine issue of fact as to whether Melton was entitled to the imposition of a constructive trust, and Johnston was not entitled to judgment as a matter of law.

## CONCLUSION

We do not here determine the scope or the extent of the policy proceeds to which Melton may be entitled. Rather we determine only that Johnston was not entitled to judgment against Melton on Melton's claim for the imposition of a constructive trust.

Melton's first and second issues are sustained. We reverse the trial court's judgment and remand this proceeding to the trial court for further proceedings on Melton's claim for the imposition of a constructive trust against the insurance policy

proceeds received by Johnston as a result of the death of McGough.


                              TOM GRAY
                              Chief Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Reversed and remanded
Opinion delivered and filed December 6, 2012
[CV06]