

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-15-00006-CV

WILLIAM FRANKLIN AND JUDITH FRANKLIN, APPELLANTS

V.

ONCOR ELECTRIC DELIVERY COMPANY, LLC, APPELLEE

On Appeal from the 170th District Court
McLennan County, Texas
Trial Court No. 2011-2709-4, Honorable Jim Meyer, Presiding

August 11, 2015

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

William and Judith Franklin (the Franklins) appeal the granting of a summary judgment against them in favor of Oncor Electric Delivery Company, LLC (Oncor) regarding the Franklins' suit against Oncor for breach of contract, conversion, and trespass.[1] By three issues, the Franklins contend that the trial court erred (1) in failing to harmonize the relevant documents that make up the easement in question, (2) in its

---

[1]Pursuant to the Texas Supreme Court's docket equalization efforts, this case was transferred to this Court from the Tenth Court of Appeals. See TEX. GOV'T CODE ANN. § 73.001 (West 2013).

interpretation of the language contained in the relevant documents regarding removal of trees and shrubs from their property, and (3) in granting the motion for summary judgment because there were remaining issues of fact to be decided. For the reasons set forth below, we will affirm the trial court's granting of the summary judgment.

Factual and Procedural Background

In 1948, Oncor's predecessor in interest, Texas Power and Light Company (TP&L) obtained an easement and right of way through condemnation proceedings initiated in McLennan County, Texas, to a 150-foot wide strip of land. The easement and right of way was obtained to build, maintain, and operate two electric transmission lines. The condemnation order provided for a 150-foot wide strip of land on which the transmission lines were to be built. Additionally, the condemnation order provided that "in order to prevent endangering the said lines by fire, storm or otherwise, and in order to prevent causing the same to become dangerous in anywise to life or property, no growth other than growing crops or trees less than fifteen (15) feet in height,. . . is to be permitted within a space bounded by a line seventy-five feet on each side of the center line heretofore described." The condemnation order also provides that such trees will be removed at the time of construction and thereafter prevented.

In August 1965, a Mr. Maddox, the Franklins' predecessor in interest, executed a supplemental easement.[2] The supplemental easement purported to grant TP&L the right to (1) move the second transmission line five feet closer to the centerline of the existing easement, (2) erect a steel tower for the second transmission line instead of the

_____

[2] The record reflects no signature by any representative of TP&L on the supplemental easement.

wooden H-frame as originally provided for, (3) cut and clear all trees, and (4) cut and keep cut all shrubs exceeding 15 feet in height.

Thereafter, in November of 1965, Maddox and TP&L entered into a modification of the condemnation agreement which provided that Maddox had the right to construct and maintain buildings and grow trees and shrubs on the outside five feet of the easement. Such were the various documents that apply to the facts of this case.

In 2009, Oncor advised the Franklins that it would be constructing a new transmission line along the existing easement. In connection with this construction, Oncor advised that it would be removing trees and vegetation from the transmission line easement. Later, Oncor identified the trees and shrubs that needed to be removed. Oncor advised the Franklins that it would pay $175 per tree for the mature trees removed and $37.50 per shrub removed. Those trees and shrubs designated to be removed were identified in a work-plan that Oncor presented to the Franklins.[3] Oncor removed the trees and shrubs that were identified in the work-plan. Once Oncor had removed the identified trees and shrubs, the Franklins then cut and removed many smaller trees and shrubs which were not identified on the Oncor plan. Oncor then offered to pay the Franklins the sum of $11,550 for the trees and shrubs removed pursuant to the work-plan. The Franklins refused Oncor's payment and instead, submitted a bill to Oncor for $137,507 for all of the trees and shrubs removed from the easement property. After Oncor refused to pay that amount, the Franklins sued Oncor.

---

[3] According to Oncor, it had no duty to pay for the trees and shrubs removed from Franklin's property; however, it offered to do so in order to maintain good relations with its customers.

After Oncor's amended answer had been filed, it moved for a traditional summary judgment. In its motion for summary judgment, Oncor contends that it had a right to remove trees and shrubs without payment of any compensation to the Franklins. Further, Oncor's motion contends that there was no contract existing between itself and the Franklins that would require Oncor to pay the Franklins any compensation for the trees and shrubs. After the Franklins had filed their response to Oncor's motion for summary judgment, the trial court granted Oncor's motion without expressing the specific grounds on which the motion was granted.

The Franklins subsequently appealed. The Franklins now present three issues to this Court wherein they complain that the trial court failed to harmonize the various documents that make up the easement in question, erred in its interpretation of the various documents regarding tree and shrub removal, and granted a summary judgment when there are actually factual issues left to be resolved. We will affirm.

Standard of Review

We review the trial court's grant of summary judgment *de novo*. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009) (per curiam) (citing *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007)). We consider all of the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant, if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *See Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex. 2006). The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and

4

that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A defendant, such as Oncor, prevails on a traditional motion for summary judgment on the plaintiff's cause of action if the defendant disproves, as a matter of law, at least one element of the plaintiff's cause of action. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991). When, as here, the trial court does not provide its reasoning for granting summary judgment, this Court will affirm the judgment if any of the theories is meritorious. *Olsen v. Comm'n for Lawyer Discipline*, 347 S.W.3d 876, 882 (Tex. App.—Dallas 2011, pet. denied).

## Analysis

Franklin's first two issues, that the trial court failed to harmonize the documents that make up the easement and that the trial court erred in its interpretation of the language of the relevant documents, are ultimately sub-issues of the question of what was the legal relationship that existed between Oncor and the Franklins at the time the trees and shrubs at issue were cut down. For their part, the Franklins insist that a contract existed that required Oncor to pay the money they requested. We will examine this contention by first reviewing the law regarding construction of deeds.

We have a fact pattern that consists of three documents: the original condemnation order, the supplemental easement, and a modification agreement. None of the parties are contending that the easement at issue is ambiguous. Thus, the construction of these documents is a matter for our *de novo* review. *See Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). According to the Franklins, when we review

all of the documents at issue, we end up at the conclusion that Oncor lacked the authority to remove the shrubs off of the easement but, rather, was limited to simply cutting and keeping cut shrubs over 15 feet high.

The Franklins' interpretation of the documents at issue ignores a significant factor. Specifically, when Mattox executed the supplemental easement in August 1965, Oncor already had the right to remove trees and shrubs from the easement. Thus, Mattox seems to be attempting to give more to Oncor than was his right. As such, this portion of the supplemental easement runs afoul of section 5.003 of the Texas Property Code. *See* TEX. PROP. CODE ANN. § 5.003(a) (West 2014) (providing that "[a]n alienation of real property that purports to transfer a greater right or estate in the property than the person making the alienation may lawfully transfer alienates only the right or estate that the person may convey"); *see also Abraham v. Crow,* 382 S.W.2d 756, 758 (Tex. Civ. App.—Amarillo 1964, no writ) (holding that, when property has been conveyed by the owner, any subsequent attempt at conveyance conveys no title).

When applied to the facts of this case, we find that the original condemnation order provided that nothing was to grow in the easement other than crops and trees under 15 feet. Additionally, the order provided that Oncor's predecessor had the right to remove anything growing in the easement during construction of the original transmission line and thereafter prevent them (which we read as trees or shrubs) from growing. Therefore, the only construction that harmonizes the provisions at issue is that Oncor had the authority to remove trees and shrubs from the easement before the 1965 supplemental easement. Accordingly, Mattox did not have the authority to grant such right to Oncor's predecessor, and the attempt to do so is of no effect. *See* TEX. PROP.

6

CODE ANN. § 5.003(a). Having reviewed the language in the various documents and having conducted our own efforts at harmonizing that language, we are of the opinion that the trial court did not commit error by failing to harmonize the language or by its interpretation of the language in the documents at issue. Therefore, the Franklins' first two issues are overruled.

Finally, the Franklins argue that there are existing fact issues that are material and remain unresolved. This, of course, would mean that the summary judgment was erroneously granted. Inasmuch as we have already determined that Oncor had the right to remove the trees and shrubs without payment of any additional funds, the only way the Franklins can succeed on this issue is if there is a subsequent agreement that would require Oncor to pay the funds requested.

To this end, the Franklins submit a series of three emails which they contend are the contract that was entered into between themselves and Oncor. Oncor's initial response is that there was no consideration for the purported contract and, in the absence of any consideration, there is no enforceable contract. *See Tex. Farm Bureau Cotton Ass'n v. Stovall*, 253 S.W. 1101, 1105 (Tex. 1923). This alone is sufficient to support the trial court's granting of the summary judgment.

However, we will address the issue of the emails directly. The emails in question all occurred on July 2, 2010. The first was sent by Oncor's attorney communicating with the attorney for the Franklins. A review of this email leads to the conclusion that Oncor's attorney is simply reciting his understanding of the discussions between the parties regarding the amount of compensation to be paid for the removed trees and

7

shrubs and other ancillary subjects. The subsequent email from the Franklins' attorney back to Oncor's attorney is, likewise, a recitation of what the attorney says is his "understanding of the deal between our clients." This email then delves into specific questions about what is a "tree" or a "shrub." The email then asks, whether it depends on species, trunk circumference, or height. The final email—a response from Oncor's attorney—simply says that it is on species basis. From this scant information, the Franklins contend that there is a completed contract between the parties for payment of the trees and shrubs.

This is so, according to their theory, because the statutory scheme of the Uniform Electronic Transactions Act. Contained in Chapter 322 of the Texas Business & Commerce Code, this code is the scheme that permits electronically created contracts and gives those contracts the same force and effect as printed and signed contracts. The fact that the subject matter that might result in a contract was discussed in an email does not necessarily convert the email into a binding contract. Section 322.007(b) of the Texas Business & Commerce Code provides that a contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation. TEX. BUS. & COM. CODE ANN. § 322.007(b) (West 2005). However, this section does not say that, simply because the subject of a proposed contract was discussed in electronic format, the parties automatically have a contract. Missing from the discussions in the emails is an agreement as to the terms of the contract; rather, what we have is the attorneys' understandings. Specifically, to have a valid contract there must be the following elements:

1.  an offer;

2.  an acceptance;

3.  a meeting of the minds;

4.  a communication that each party has consented to the agreement's terms;

5.  execution and delivery of the contract; and

6.  consideration.

*See Hubbard v. Shankle*, 138 S.W.3d 474, 481 (Tex. App.—Fort Worth 2004, pet denied). The emails contain no firm offer, no acceptance, and no agreement on the terms and recite no consideration. Accordingly, there is no contract. *See id.*

As to the Franklins' suggestion that there are unresolved fact issues, and they list several for the Court's consideration, we note that, since Oncor had the right to go on the property pursuant to the original condemnation order, there could be no trespass, and, further, we have determined that Oncor had the right to remove the trees and shrubs at issue pursuant to the same original condemnation order. Thus Oncor's actions did not exceed the bounds of any legal right they may have had. *See Koelsch v. Indus. Gas Supply Corp.,* 132 S.W.3d 494, 497–98 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). Likewise, under the authority granted to Oncor under the original condemnation order, it could not be said to have wrongfully exercised dominion and control over the Franklins' property. *See Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 391 (Tex. 1997). Thus, there could be no conversion of the Franklins' property. Our resolution of the various factors considered throughout this opinion resolve all alleged fact issues in a negative fashion; that is to say, our opinion concludes there are no

material issues of fact that remain to be resolved. The Franklins' issue to the contrary is overruled.

Conclusion

Having overruled each issue presented by the Franklins, we affirm the trial court's grant of a summary judgment in favor of Oncor.

Mackey K. Hancock
Justice