In re: Pamela STALEY Declaratory
Judgment Action.

No. 05–08–01171–CV.

Court of Appeals of Texas,
Dallas.

Aug. 3, 2010.

Mary D. McKnight, Law Office of McKnight & Young, L.L.P., Dallas, TX, for Appellant.

M. Forest Nelson, Dallas, TX, James A. Pikl, Scheef & Stone, LLP, Frisco, TX, for Appellee.

Before Chief Justice WRIGHT and Justices MOSELEY and FRANCIS.

## OPINION

Opinion By Justice MOSELEY.

Pamela Staley entered into a Compromise Settlement Agreement (CSA) with trustees of various trusts formed during her marriage to Thomas Staley. The CSA was also incorporated into a decree of divorce between Pamela and Thomas. A number of subsequent lawsuits were filed asserting claims regarding the trusts, the CSA, and the divorce. After these suits were consolidated, the trial court severed a number of the claims into a separate case and rendered a final judgment. The judgment ordered specific performance of the CSA by ordering one of the trusts to pay $600,000 plus interest into the court's registry and ordering Pamela to execute certain motions and other documents. The judgment also dismissed with prejudice Pamela's claim for partition of certain real property held by one of the trusts and well as her other trust-related claims.

Pamela appeals, complaining the trial court erred in granting the motions for summary judgment filed by Thomas and Staley & Associates, Inc., and James Herblin, individually and as trustee of Heritable Trust assignee of Charis Interests, and erred in denying her own motion for summary judgment. She also argues the trial court improperly "modified and altered" the terms and conditions of the CSA and improperly supplied property descriptions. We affirm.

## I. BACKGROUND

We detail only the background facts and the litigation among these parties pertinent to the dispositive issues on appeal. During Pamela and Thomas's marriage, trusts were established to protect their assets and benefit their children. Among the trusts established were Egarg Interests and Charis Interests. Real property was transferred to the trusts, including five parcels of land totaling about 123 acres bought during the Staleys' marriage, referred to as the Collin County farm.

### A. Divorce Litigation

Pamela sued Thomas for divorce in 1994. She alleged that Thomas had "initiated a plan to transfer and conceal assets of the community estate" and "had transferred community assets into [certain] trusts" including interests in certain real property. Among her claims were a claim for fraudulent transfer against Thomas, a request for an inventory and appraisement of all separate and community property, and claims for fraud and breach of fiduciary duty against the community estate. That suit was dismissed.

In 1999, Pamela again sued Thomas for divorce, filing her petition in the 254th Judicial District Court, Dallas County. She made essentially the same claims as she did in 1994 regarding the creation of the trusts and transfers of community property to them without her consent. She also joined as parties the trustees of Egarg Interests and Charis Interests.

The trial court rendered a final decree of divorce on May 29, 2002. The decree awarded Thomas as his sole and separate property any "rights of interest in property put in the trusts formed during the marriage of the parties," and divested Pamela of "all right, title, interest, and claim in and to such property." The decree went on to state: "The trusts do not form part of the community estate created with and during the marriage of [Thomas and Pamela]."[1]

---

1. It is undisputed that, as of the May 29, 2002 divorce decree, the Collin County farm as well as all the remaining real property owned

The divorce decree also incorporated the CSA, which was between Pamela and her representatives and those in privity with her (called the "Releasing Parties"), and the trustees of certain trusts, including Charis Interests, and their assigns and any entity acting for them in the future (called the "Released Parties"). The CSA provided, in relevant part (quoting below):

1. [Pamela] had actual knowledge of the formation of each of the trusts, at or about the time each trust was formed.

2. The RELEASING PARTIES ... have no ownership or possessory interest in the corpus/Company Holdings of any of the trusts to the best of [Pamela]'s knowledge....

4. The trusts do not form part of the community estate created with and during the marriage of [Thomas and Pamela]. All of the trusts provide for the ultimate distribution of the Company Holdings, and not the generation of profits from the dissipation of Company Holdings....

6. [Pamela], at or about the time the 1994 divorce proceedings were initiated either knew or had reason to know about the activities of each of the trusts....

The RELEASING PARTIES on behalf of themselves and on behalf of their respective representatives, lawyers, and agents, do hereby agree, represent, warrant and covenant as follows:

*COMPROMISE OF DISPUTED CLAIMS.* This Agreement is a compromise of disputed and known and unknown past, present or future claims arising out of formation and activities of trusts formed during the marriage of [Thomas and Pamela]....

*PAYMENT.* The RELEASED PARTIES will pay to RELEASING PARTIES within twelve months of this Agreement's execution by all parties the sum of $700,000.00, by issuing the following checks to the following payees for the following time frames:

1. Within ten days of execution of this Agreement by all parties to the Agreement, $100,000.00 payable to Pamela S. Staley, and Moore & Anderson, L.L.P., said payment to be delivered to the offices of Moore & Anderson, L.L.P. ...; and

2. Within either twelve months of execution of a Joint Motion to Dismiss with Prejudice and Agreed Order of Dismissal by all parties to this agreement, by and through their respective counsel, or within ten (10) days of one of the trusts receiving proceeds from closing on the sale of a parcel of land held by one of the trusts released in this Agreement, whichever occurs first, $600,000.00 payable to Pamela S. Staley and Moore & Anderson, L.L.P., said payment to the delivered to the offices of Moore & Anderson, L.L.P....

This payment of $600,000.00 shall be secured by a deed of trust upon property in Carrollton, ... and a promissory note in the principal amount of $600,000.00. The note shall be at no interest for the six month period following execution of this Agreement. After that six month period, the note shall accrue simple interest at the prime rate....

*CONDITIONS.* This Agreement shall not be required to be paid, and this Agreement shall be of no force or effect, unless and until all of the following

by the other Staley trusts was held by Charis Interests.

events and conditions occur: (1) All parties to the Agreement have executed this Agreement; (b) A Joint Motion to Dismiss With Prejudice and an Agreed Order of Dismissal is signed by the counsel of record for the relevant RELEASED PARTIES and RELEASING PARTIES in the Lawsuit; and (c) the representation from all counsel of record for RELEASING PARTIES and RELEASED PARTIES confirming the settlement represented by this Agreement as a good faith settlement.

Upon the delivery of the RELEASED PARTIES' initial payment of $100,000.00 as described in the *PAYMENT* section above, the parties, by and through their respective counsel, shall execute, deliver and file in the Lawsuit a Joint Motion to Dismiss with Prejudice and Agreed Order of Dismissal....

*EXECUTION OF OTHER DOCUMENTS.* From time to time at the request of the RELEASED PARTIES, and without further consideration, at such party's expense and within a reasonable period of time after request hereunder is made, the RELEASING PARTIES hereby agree to execute and deliver any and all further documents and instruments, and shall do all acts, as the RELEASED PARTIES may reasonably request.

The divorce decree was not appealed.

## B. Post–Divorce Payment and Property Dispositions

It is undisputed that the $100,000 payment was made, and that Pamela's counsel signed a joint motion to dismiss and agreed order of dismissal and gave them to Pamela, but Pamela never furnished them to opposing counsel.

In August 2002, Charis Interests transferred its ownership in real property, including the Collin County farm, to Allodial Limited Partnership in exchange for a limited partnership interest in Allodial. Charis Interests then assigned its partnership interests to Heritable Trust and ceased to exist. In either August or September 2002, Allodial sold some real property (not including the Collin County farm) for over $2 million (the 2002 sale).

## C. Post–Divorce Litigation

### 1. 134th District Court (Dallas County) Litigation

In January 2003, Herblin, as trustee of Heritable Trust assignee of Charis Interests, sued Pamela in the 134th Judicial District Court in Dallas County. In his First Amended Original Petition, Herblin asked the trial court to interpret the CSA and declare the rights and duties of the parties. He alleged Pamela had breached the CSA by failing to execute and deliver documents and instruments required under the CSA and as reasonably requested by the trusts. He asserted that he had performed under the CSA because he had made the $100,000 payment and the $600,000 payment was not yet due. Herblin requested the remedy of specific performance, contending Pamela's failure to comply with the CSA constituted inequitable conduct and requesting the court to order her "to execute and deliver the necessary documents to effectuate" the CSA.

Pamela answered and alleged causes of action against Herblin based on allegations concerning the formation of the trusts and the transfers of property to them, as well as the 2002 sale. In her live pleading at the time of summary judgment, entitled "Fourth Amended Counter–Petition to Disregard Sham Entities, Set Aside Void Transfers, Partition Real Property, Appoint a Receiver, and For Damages," she named as defendants Staley & Associates, Inc.; Herblin, individually and as trustee

of Heritable Trust assignee of Charis Interests; and Thomas individually.

Pamela alleged that the trusts were set up by Thomas, that they were sham entities, that Thomas made "void, unilateral transfers" to the trusts, and that she did not consent to the transfer of community property to the trusts. She alleged a "civil conspiracy to defraud" her of her right to community property and "fraud on the community." She requested the appointment of a receiver for all the property in the trusts. She also alleged that the CSA was unenforceable and that Herblin's failure to make the $600,000 payment after the 2002 sale was a material breach.

In Herblin's first motion for summary judgment, filed on September 11, 2006, he requested summary judgment on his claim for breach of contract seeking specific performance relief, arguing Pamela's declaratory relief was subsumed within his breach of contract claim; Herblin also argued that Pamela had no evidence of certain specified elements of her rescission counterclaim. Pamela responded to this motion. In February 2007, the trial court sent a letter denying Herblin's motion.

### 2. 271st District Court (Wise County) Litigation

In February 2007, Pamela and three of the Staleys' children filed a Motion to Modify in Suit Affecting Parent–Child Relationship, Original Petition for Declaratory Judgment, for Damages and Other Relief in the 271st Judicial District Court in Wise County, where they resided. In addition to Thomas, who was sued "individually and in his capacity in Staley & Associates, Inc.," this pleading also named as defendants Staley & Associates Inc. and Herblin, individually and as trustee of Heritable Trust assignee of Charis Interests. Among other allegations, the plaintiffs alleged the trusts established by Thomas were "illusory" and Thomas trans-

ferred to the trusts property in which Pamela owned an interest. The "real property" that was the subject of the pleading was the Collin County farm. Among other claims and requests for relief, the plaintiffs sought enforcement of the divorce decree and a declaratory judgment setting aside the CSA as a nullity.

### 3. 219th District Court (Collin County) Litigation

The 134th and the 271st Judicial District Courts transferred their respective cases to Collin County. They were eventually transferred to the 219th Judicial District Court, where they were administratively consolidated. On September 27, 2007, Thomas and Staley & Associates, Inc. (collectively, Thomas) filed a motion for summary judgment, asserting both traditional and no-evidence grounds. In part, Thomas asserted that the summary judgment evidence established as a matter of law his affirmative defenses of res judicata and statute of limitations.

On October 3, 2007, Herblin filed a second motion for summary judgment, in which he joined in and incorporated Thomas's motion for summary judgment. Pamela filed responses to both Thomas's motion and Herblin's second motion.

Pamela also filed her own motion for summary judgment, to which both Thomas and Herblin responded.

Thereafter, the trial court signed a memorandum order granting in part Herblin's first motion for summary judgment (which the Dallas district court judge had denied by letter ruling), finding the CSA to be "valid and enforceable." In the memorandum order, the trial court also granted Thomas's motion for summary judgment and Herblin's second motion for summary judgment in part, finding the CSA enforceable, dismissing Pamela's declaratory judgment concerning the Collin

County farm, and granting summary judgment to "all of Pamela's claims for removal of trustee, breach of fiduciary duty, common law fraud, conversion, civil conspiracy, accounting and receivership, as it relates to any claims against [the Collin County farm]." The trial court denied Pamela's motion for summary judgment.

Subsequently, the trial court severed into a new case:

- Heritable Trust's claim against Pamela for specific performance of the CSA, and Pamela's counterclaim against Heritable Trust for declaratory judgment that the CSA was unenforceable;
- Pamela's claims for declaratory judgment to set aside the CSA and request to divide the "subject property"; and
- all of Pamela's claims for removal of trustee, breach of fiduciary duty, common law fraud, conversion, civil conspiracy, accounting and receivership "as it related to any claim against the 'subject property' which would include all of Pamela Staley's claims and causes of action seeking to attack or set aside, in whole or in part, the May 29, 2002 Final Decree of Divorce."

The new case was assigned trial court cause number 219–01011–2008 and styled "In re Pamela Staley Declaratory Judgment Action." This is the case before us.

The trial court thereafter rendered a final judgment, dated August 4, 2008, reciting, in pertinent part:

that Heritable Trust's motion[2] for summary judgment on the declaratory judgment claims is GRANTED. The Court finds the 2002 CSA is valid and enforceable, and shall be enforced, to wit: IT IS ORDERED that Heritable Trust shall deposit into the Court's registry within sixty (60) days of the date of this Judgment the sum of $600,000.00 plus simple interest from May 30, 2002 to June 15, 2008 in the sum of $200,000 plus simple interest from June 16, 2008 until the date of deposit at the rate of 5%.

IT IS FURTHER ORDERED that Pamela Staley shall deliver to the Court within sixty (60) days of the date of this Judgment a signed motion and proposed order to dismiss all of her pre–2002 claims against the following trusts, to wit: Charis Interests, Ecarg, Cromwell Holding Company, and Gideon Interests, and shall execute documents necessary to release all of her claims against the three acres of Carrollton property that was used as security for the $600,000.00.

IT IS FURTHER ORDERED that Thomas C. Staley's Motion for Summary Judgment is GRANTED in part, and all claims made by Pamela Staley in which she claims any interest in or relating to the five (5) parcels of land collectively referred to as the Collin County farm consisting of approx. 123 acres of property located in Collin County, Texas and referred to as the "subject property" ... are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Heritable Trust's October 3, 2007 and Thomas C. Staley's September 27, 2007 (as supplemented and corrected on October 1, 2007) Motions for Summary Judgment are GRANTED in part, and all of Pamela Staley's claims for removal of trustee, breach of fiduciary duty, com-

---

**2.** We construe the judgment's references to "Heritable Trust's" motions to refer to the motions filed by Herblin, its trustee. *See, e.g., Ray Malooly Trust v. Juhl,* 186 S.W.3d 568, 570 (Tex.2006) (per curiam) (noting a trust is not a separate legal entity and stating general rule that "suits against a trust must be brought against its legal representative, the trustee").

mon law fraud, conversion, civil conspiracy, accounting and receivership are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Pamela Staley's October 25, 2007 Counter Motion for Summary Judgment is DENIED in its entirety.

All other relief requested in this cause is DENIED. This Order disposes of all parties and claims and constitutes the final judgment in the declaratory judgment actions relating to the enforceability of the 2002 CSA and the request to divide the Subject Property.

This appeal followed.

## II. DISCUSSION

### A. Standard of Review

We review a traditional summary judgment using the well-established standard. The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). In deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Sudan v. Sudan,* 199 S.W.3d 291, 292 (Tex.2006) (per curiam). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *City of Keller v. Wilson,* 168 S.W.3d 802, 824–25 (Tex.2005). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp. of Am.,* 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied). When a movant asserts multiple grounds for summary judgment, and the order does not state the theory upon which the trial court based judgment, the nonmovant must show on appeal the failure of at least one element of each theory asserted. *Benchmark Bank v. State Farm Lloyds,* 893 S.W.2d 649, 650 (Tex.App.-Dallas 1994, no writ) (citing *Gibbs v. Gen. Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970)).

When, as here, both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *Guynes v. Galveston County,* 861 S.W.2d 861, 862 (Tex.1993); *Howard v. INA County Mut. Ins. Co.,* 933 S.W.2d 212, 216 (Tex.App.-Dallas 1996, writ denied). Neither party can prevail because of the other's failure to discharge its burden. *Howard,* 933 S.W.2d at 216. When both parties move for summary judgment, we consider all the evidence accompanying both motions in determining whether to grant either party's motion. *Howard,* 933 S.W.2d at 217; *Benchmark Bank,* 893 S.W.2d at 650. When the trial court grants one motion and denies the other, the reviewing court should determine all questions presented. *See Comm'rs Court of Titus County v. Agan,* 940 S.W.2d 77, 81 (Tex.1997). The reviewing court should render the judgment that the trial court should have rendered. *Id.*[3]

---

3. Additionally, if a motion for summary judgment presents both no-evidence and traditional grounds as to the same challenged element, we first review the propriety of the summary judgment under the rule 166a(i) no-evidence standards. *See Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 600 (Tex.2004) ("If the plaintiffs fail to produce more than a scintilla of evidence under that [rule 166a(i)] burden, then there is no need to analyze whether [the defendant's] proof satisfied the Rule 166a(c) burden.").

However, our review of Thomas's motion for summary judgment (in which Herblin joined), shows that his "no-evidence" grounds related to his argument that there was no evidence that the decree overlooked any particular property, and thus, pursuant to sections 9.203 and 9.007 of the family code, a court cannot disturb or change the property

Pamela presents six issues on appeal. The arguments under these six issues are somewhat complex, intertwined, and repetitive. However, collectively they complain of the trial court's judgment: (1) finding "the 2002 CSA is valid and enforceable and shall be enforced ..."; (2) dismissing Pamela's claims to "any interest in or relating to" the Collin County farm; and (3) dismissing all Pamela's claims for "removal of trustee, breach of fiduciary duty, common law fraud, conversion, civil conspiracy, accounting and receivership." As a matter of organization, we will address Pamela's arguments under these dispositions.

## B. Arguments Concerning the Validity and Enforceability of the CSA

The enforceability of the CSA was a subject of Herblin's first motion for summary judgment (filed September 11, 2006, in the 134th (Dallas) District Court and transferred to Collin County), and of Pamela's motion for summary judgment (filed October 25, 2007 in the 219th (Collin) District Court). Pertinent to the issues on appeal, Herblin argued he was entitled to specific performance of the CSA, and Pamela argued the CSA was unenforceable and Herblin breached it. Because specific performance of the CSA rests on its enforceability, we first consider Pamela's arguments that the trial court erred by denying her motion for summary judgment on grounds it was unenforceable.

### 1. Applicable law

 "A person interested under a ... written contract ... may have determined any question of construction or validity arising under the ... contract ... and obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem.Code Ann. § 37.004(a) (Vernon 2008). The elements of a valid and enforceable contract are: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Hubbard v. Shankle*, 138 S.W.3d 474, 481 (Tex.App.-Fort Worth 2004, pet. denied). The elements of a breach of contract claim are: (1) the existence of a valid contract between plaintiff and defendant; (2) the plaintiff's performance or tender of performance; (3) the defendant's breach of the contract; and (4) the plaintiff's damage as a result of the breach. *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 593 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

 Specific performance is not a separate cause of action, but an equitable remedy that may be awarded upon a showing of breach of contract. *Stafford v. S. Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex.App.-Dallas, 2007, pet.denied). It is used as a substitute for monetary damages when such damages would not be adequate. *Id.* A party seeking specific performance must demonstrate that he has performed, or tendered performance of, his obligations under the contract. *Id.*

### 2. Pamela's Motion for Summary Judgment

Pamela asserted a cause of action "to set aside the [CSA] for material breach by

---

division in a divorce decree. Whether or not this is a proper subject for a no-evidence motion, *see Kelly v. Brown*, 260 S.W.3d 212, 216 (Tex.App.-Dallas 2008, pet. denied) ("A party cannot file a no-evidence motion for summary judgment based on a matter, such as an affirmative defense, on which it has the burden of proof."), our conclusions set forth herein make it unnecessary to address this subject on either no-evidence or traditional grounds. *See* Tex R.App. P. 47.1. Thus, we do not recount the standard of review applicable to no-evidence summary judgments.

plaintiff, fraudulent inducement, and unenforceability, unconscionability, and undue influence." She moved for summary judgment on her claims, in part, on grounds that the CSA "has been materially breached and is unenforceable." The trial court's final judgment denied her motion.

■ Pamela's fourth issue on appeal states: "The Trial Court should have granted Appellant's Motion for Summary Judgment finding the [CSA] to be materially breached and unenforceable." Pamela argues that, according to its terms, the CSA is effective "as of the last date of execution set forth below," and the interest provision concerning the $600,000 payment was to begin "six months following the date of execution." However, the summary judgment evidence shows that although the CSA is signed, it is undated. Because it is undated, Pamela argues the CSA is unenforceable.

However, the CSA was incorporated in the decree of divorce that was dated May 29, 2002. Accordingly, the provisions of the CSA conditioned on dates rest on the date of the divorce decree. *See Soto v. Soto,* 936 S.W.2d 338, 341 (Tex.App.-El Paso 1996, no writ) (upon approval of marital property agreement, court may incorporate it by reference in divorce decree; when so incorporated "the divorce decree becomes a consent judgment, subject to the same degree of finality and binding force as a judgment rendered in an adversary proceeding"). We reject Pamela's arguments that an executed but undated CSA that has been incorporated into a dated, signed final judgment is nevertheless unenforceable for lack of a date of execution.

■ Pamela also argues the CSA is unenforceable because the "Execution of other Documents" provision does not specify the nature of the documents, a time certain for her to execute such documents,

and the "reasonableness of such requests is certainly a fact issue." She also argues the CSA is unenforceable because the "Payment" and "Conditions" provisions were contradictory and conflicting. However, these arguments do not concern the elements of an enforceable contract or breach of contract. *See Hubbard,* 138 S.W.3d at 481; *Frost Nat'l Bank,* 29 S.W.3d at 593. Further, Pamela agreed at the divorce prove-up that the CSA "contains the terms and conditions of [her] agreement in connection with settling [her] claims against the trust, the third-party defendants in this case." Pamela produced no summary evidence that she did not agree to the terms and conditions of the CSA.

■ Pamela also argues the CSA is unenforceable because of the formation of Heritable and Allodial. She argues the payment of the $600,000 was "impossible" because of the formation of these entities. Pamela refers to certain documents presented to the trial court by Thomas's attorney for in camera review. However, Pamela's motion for summary judgment did not present this argument; thus we will not consider it as grounds for reversing the trial court's judgment denying her motion. *See* TEX.R. CIV. P. 166a(c); *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 677 (Tex.1979).

■ Pamela also argues the CSA is unenforceable because of "undue influence" in signing the CSA, based on her allegation that counsel told her to sign the CSA because otherwise "she would get nothing." Duress or undue influence constitute affirmative defenses that, if applicable, might negate consent. *See* TEX.R. CIV. P. 94. However, the burden of proving such an affirmative defense would be on Pamela. *See id.* The summary judgment record does not show that Pamela raised

an issue of fact as to each issue of such a defense, such as to negate her consent to the terms of the CSA. *See id.; Hubbard,* 138 S.W.3d at 481.

■ In her sixth issue, Pamela argues, in part: "Had Heritable tendered the $600,000.00 (which the CSA recites is for *"personal injuries"*), this would hardly represent Pamela's share of a $17,000,000.00 estate, ending a 21 year marriage with 5 children, and is grossly unconscionable." (Footnote omitted.) This is the totality of Pamela's argument that the CSA is unenforceable because of "gross unconscionability." We conclude she has waived this argument on appeal. *See* TEX.R.APP. P. 38.1(h) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

Finally, Pamela contends Herblin materially breached the CSA because the 2002 sale: (1) was "hidden" by Thomas and Herblin, and (2) triggered the $600,000 payment under the CSA's "Payment" provision. The CSA clearly provides that payment would be made only after Pamela met the "Conditions" provision, and it is undisputed that she did not.

### 3. Herblin's First Motion for Summary Judgment

In Herblin's first motion, he asserted the CSA was an enforceable contract; that Herblin fully performed the CSA by paying $100,000; that Pamela breached the CSA by failing to deliver the signed motion to dismiss and agreed order; and that Pamela did not perform the conditions precedent to the $600,000 payment.[4] He sought a judgment on his claim for breach of the CSA and request for specific performance.

The trial court denied Herblin's first motion while the case was pending in Dallas County. After the case was transferred to Collin County and Herblin's claim was severed into the current case, the trial court rendered a final judgment (as set out above) granting Herblin's first motion for summary judgment, declaring the CSA valid and enforceable, and ordering the parties to take certain actions pursuant to the CSA.

Pamela's first issue on appeal states: "The Trial Court should not have granted Summary Judgment for Herblin and Heritable on issues not specifically pled in the Summary Judgment Motion before the Court, which was filed October 3, 2007." She asserts that Herblin's first motion was based on limitations grounds and that the motion "does not even address the enforceability of the CSA."

Pamela is incorrect. As stated previously, Herblin's first motion asserted that Pamela breached the CSA and that he was entitled to specific performance of that agreement. Herblin's *second* motion joined and incorporated Thomas's motion for summary judgment as to Pamela's

---

4. The summary judgment record includes the CSA, the divorce decree, and the reporter's record for the hearing at which the CSA was discussed in light of a final divorce decree, pending resolution of issues concerning the children. The summary judgment evidence shows that Pamela signed the CSA. In the prove-up hearing for the divorce on April 25, 2002, Pamela responded "Yes" when her counsel asked: "Mrs. Staley, is it your agreement that the trust settlement agreement contains the terms and conditions of your agreement in connection with settling your claims against the trust, the third-party defendants in this case?" In the divorce decree, the trial court stated, "The Court decrees and approves the [CSA] entered into between [Pamela and others and the trustees and others]. Same attached as Exhibit B." It is undisputed that Pamela received the $100,000 payment pursuant to the CSA, but did not deliver a joint motion to dismiss with prejudice and an agreed order of dismissal per the terms of the CSA.

trust-related claims against him. To the extent necessary, we will address Pamela's arguments as to the second motion in connection with those claims. However, her argument is unavailing as to the final judgment ordering specific performance of the CSA.

 Under her first issue, Pamela also argues Herblin's first motion for summary judgment was denied by the judge of the 134th Judicial District Court (Dallas County) before the case was transferred to Collin County, and thus the trial court in Collin County erred in granting that motion. However, an order denying a motion for summary judgment is an interlocutory ruling that may be changed or modified until a final judgment is rendered; a previously denied motion for judgment may be granted without further motion or prior notice to the parties. *See Winn v. Martin Homebuilders, Inc.*, 153 S.W.3d 553, 556, (Tex.App.-Amarillo 2004, pet. denied). We reject Pamela's argument to the contrary.[5]

**C. Arguments Concerning Pamela's Claims to Interest in the Collin County Farm**

In her Motion to Modify, filed in Wise County, Pamela asserted she and Thomas used community funds to buy the Collin County farm and requested it be partitioned. After the Wise County suit was transferred to Collin County, Thomas filed a motion for summary judgment "addressing all claims and causes of action pending against them [that is, Thomas and Staley & Associates, Inc.] in this action." Thomas's traditional motion for summary judgment asserted, *inter alia*, that Pamela's claims sought to re-litigate the terms of the 2002 divorce decree, and were barred

by res judicata based on that decree. The trial court granted Thomas's motion without stating the grounds on which it was ruling.

**1. Applicable law**

 An affirmative defense, such as res judicata, is one of confession and avoidance. *Texas Beef Cattle Co. v. Green,* 921 S.W.2d 203, 212 (Tex.1996). An affirmative defense does not seek to defend by merely denying the plaintiff's claims, but rather seeks to establish an independent reason why the plaintiff should not recover. *Id.* Res judicata applies to a final divorce decree to the same extent that it applies to any other final judgment. *Baxter v. Ruddle,* 794 S.W.2d 761, 762 (Tex. 1990). If an appeal is not timely perfected from the divorce decree, res judicata bars a subsequent collateral attack. *Id.* Res judicata applies even if the divorce decree improperly divided the property. *Id.*

 Res judicata bars the relitigation of claims that have been finally adjudicated or that could have been litigated in the prior action. *See Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 628 (Tex. 1992). For res judicata to apply, the following elements must be present: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) the same parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Igal v. Brightstar Info. Tech. Group, Inc.,* 250 S.W.3d 78, 86 (Tex.2008).

**2. Discussion**

 In support of his motion, Thomas submitted the following evidence: his affi-

---

**5.** In her second issue, Pamela also contends the trial court should not have modified and altered the terms and conditions of the CSA and should not have supplied property de-

scriptions. We address that issue in the context of Pamela's complaints about the trial court's rulings concerning the Collin County farm.

davit stating that he and Pamela were married in 1980, and that they established "a series of trusts" in 1993 and 1994 and transferred real estate they owned to these trusts; Pamela's handwritten notes from the 1994 divorce that the Collin County farm was placed in Egarg Interests, one of these trusts; and the final decree of divorce in the 254th Judicial District Court stating that "[a]ny rights of interest in property put in the trusts formed during the marriage of the parties" was Thomas's separate property, and "the trusts do not form part of the community estate created with and during" Pamela and Thomas's marriage. In addition, the summary judgment evidence shows that as of May 29, 2002, Charis Interests was the owner of all property previously held by the trusts, and that Heritable was Charis Interests's assignee as to any interest it had in the property.

We conclude Thomas proved the elements of his affirmative defense of res judicata on the Collin County farm claim. *See Igal,* 250 S.W.3d at 86; *Barr,* 837 S.W.2d at 628. Accordingly, the burden of proof shifted to Pamela to present to the trial court any issues precluding summary judgment in Thomas's favor on this affirmative defense. *See City of Houston,* 589 S.W.2d at 678.

In her response to Thomas's motion, Pamela argued that the divorce decree was interlocutory. Under her sixth issue, Pamela argues that res judicata "does not apply to an interlocutory order" and that the order is interlocutory because a motion to dismiss must still be signed and she has been asked to sign deeds to property that she contends had been purchased with community funds.

However, the divorce decree meets the standard of a final judgment. *See, e.g., Brines v. McIlhaney,* 596 S.W.2d 519, 522–23 (Tex.1980) (orig. proceeding) (discussing final divorce decree). Pamela cites no authority that any actions to effect the property division render the divorce decree interlocutory. We reject Pamela's argument to the contrary.[6]

Under her third issue, Pamela also argues, *inter alia,* that the trial court should not have granted Thomas's motion for summary judgment. She asserts Thomas's summary judgment proof is "not relevant to any issues before the Court." However, she does not argue that the trial court erred in not granting her objections to such evidence on relevancy grounds. In fact, Pamela's brief states that all of the parties failed to obtain rulings on objections and special exceptions to the summary judgment evidence, and thus waived them. Accordingly, we need not consider this argument.

Because Thomas conclusively proved his affirmative defense of res judicata, the burden shifted to Pamela to raise an issue of fact precluding summary judgment on that ground. Because Pamela failed to meet this burden, we conclude the trial court did not err in granting Thomas's motion for summary judgment directed to Pamela's claims relating to the Collin County farm. *See City of Houston,* 589 S.W.2d at 678 (movant may obtain summary judgment by pleading and conclusively establishing each element of affirmative defense, shifting burden to nonmovant to present evidence sufficient to raise fact

---

6. Pamela's response to the motion for summary judgment also argued that res judicata was inapplicable because the parties to the prior litigation, or those in privity with them, were not the same because the present suit included new parties (Heritable Trust, Herblin, Allodial, and Charis Interests). However, Pamela does not present a "new party" or "privity" argument on appeal.

issue); *Benchmark Bank*, 893 S.W.2d at 650 (when movant asserts multiple grounds for summary judgment, and order does not state theory upon which trial court based judgment, nonmovant must show on appeal failure of at least one element of each theory asserted).[7]

■ Pamela also makes two other arguments directed to the Collin County farm under her second issue. First, she contends the trial court should not have modified and altered the terms and conditions of the CSA and should not have supplied property descriptions. She argues specifically that the trial court erred in adding the description of the Collin County farm because neither the CSA nor the divorce decree contains any property description. However, the record shows that Pamela claimed the Collin County farm was community property and had not been partitioned in the divorce. The record includes the description of the Collin County farm. We conclude the complained-of description was necessary to carry the trial court's final judgment in this case into execution concerning the declaratory judgment and specific performance issues. *See Schwartz v. Jefferson*, 520 S.W.2d 881, 888 (Tex.1975) (orig. proceeding) (trial court has authority to make orders necessary to carry judgment into execution in manner consistent with provisions and finality of judgment).

■ Second, Pamela argues she seeks to partition undivided community real property. However, it is undisputed that Charis Interests held the Collin County farm at the time of the divorce and that the divorce decree awarded Thomas "[a]ny rights of interest in property put in the trusts formed during the marriage of the parties" and the "trusts do not form part of the community estate created with and during" Thomas and Pamela's marriage. According, the divorce decree clearly shows the Collin County farm is not undivided community real property subject to post-divorce partition.

## D. Arguments Regarding Pamela's Other Trust–Related Claims

In her Motion to Modify, filed in Wise County, Pamela asserted claims for: the removal of trustees; breach of fiduciary duty; common law fraud; conversion; civil conspiracy; an accounting; and the appointment of a receiver. These trust-related claims rested on her allegations that the trusts Thomas established were fictitious entities and Thomas's "alter egos," and that he fraudulently transferred community property to these entities.

### 1. Thomas's Motion for Summary Judgment

■ We noted above that Thomas moved for summary judgment on grounds, among others, that he was entitled to summary judgment on all Pamela's claims because they were barred by res judicata. We have concluded above that Thomas proved that affirmative defense as to Pamela's claim for partition of the Collin County farm. Likewise, Thomas's evidence shows that, in the 1999 divorce, Pamela joined as parties the trustees of the trusts formed during the marriage and alleged fraud and conversion based on Thomas's transfer of community property to the trusts, conclusively establishing that the same trust-related claims either were raised or could have been raised in the 1999 divorce. *See Igal*, 250 S.W.3d at 86; *Barr*, 837 S.W.2d at 628.

Under her fifth issue, Pamela asserts the trial court should not have granted

---

**7.** We need not address Pamela's arguments regarding the affirmative defense of the stat- ute of limitations raised in Thomas's motion for summary judgment.

Thomas's motion for summary judgment dismissing her claims for "fraud, civil conspiracy, partitioning undivided real property and damages." As she argued in connection with the Collin County farm, Pamela argues that res judicata "does not apply to an interlocutory order."

We rejected those arguments previously in connection with her claims involving the Collin County farm. Thus, we conclude that Thomas proved his affirmative defense of res judicata to these trust-related claims, and that Pamela failed to meet her burden to present to the trial court any issues that would preclude summary judgment in Thomas's favor on this ground. *See City of Houston,* 589 S.W.2d at 678; *Benchmark Bank,* 893 S.W.2d at 650. We conclude the trial court did not err in granting Thomas's summary judgment in his favor on these trust-related claims on grounds of res judicata.

**2. Herblin's Second Motion for Summary Judgment**

In his second motion for summary judgment, Herblin "join[ed] in, and incorporate[d] by reference in its entirety" Thomas's motion for summary judgment.[8] Therefore, we reach the same conclusion concerning Herblin's second motion for summary judgment that we did as to Thomas's motion, that is, that the trial court did not err in granting summary judgment on the trust-related claims on res judicata grounds.

### III. CONCLUSION

As set forth above, we have reviewed and rejected, or determined we need not

8. Pamela did not object to Herblin's motion on grounds that it incorporated Thomas's motion, nor does she make such an argument on appeal.

9. We need not address Pamela's arguments under her second issue concerning her claims for "abuse of process" and interference with contractual relations because those claims

address,[9] Pamela's arguments complaining of the trial court's final judgment. To the extent Pamela contends her brief has raised any other arguments, we conclude that they are waived. *See* TEX.R.APP. P. 38.1(f) ("The brief must state concisely all the issues or points presented for review."); (h) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Accordingly, we resolve Pamela's six issues against her. We affirm the trial court's final judgment in its entirety.

were not included in the severance order. We need not address Pamela's arguments in her fourth issue concerning the formation and actions of the trusts after the divorce decree because the severance order shows these claims were not included in the new cause. Pamela did not address any issue or argument to the severance order.