**SECURITIES and EXCHANGE COMMISSION, Plaintiff,**

v.

**LIBERTY CAPITAL GROUP, INC., and Jason A. Grieg, Defendants,**

No. C98–1515C.

United States District Court, W.D. Washington, at Seattle.

Feb. 18, 1999.

Brian C. Kipnis, U.S. Attorney's Office, Seattle, WA, Thomas D. Carter, Securities and Exchange Commission, Denver Regional Office, Denver, CO, for Plaintiff.

Bradford J. Lam, Cairns Dworkin & Chambers, Denver, CO, Robert Alan, Kaye, Edmonds, WA, for Defendants.

## ORDER

COUGHENOUR, Chief Judge.

This is an anti-touting action brought by the SEC against Liberty Capital and its principal, Jason Grieg. The SEC claims that Defendants violated § 17(b) of the Securities Act of 1933, 15 U.S.C. § 77q(b), by publishing favorable accounts of publicly-traded companies in a newsletter and on the Internet without disclosing that those companies had paid them cash and stock. Defendants have moved to dismiss under Rule 12(b)(6) for failure to state a claim, and the SEC has cross-moved for summary judgment. The Court denies the Motion to Dismiss, and dismisses the motion for Summary Judgment as premature.

## BACKGROUND

Jason A. Grieg started Liberty Capital in late 1995 to provide corporations with investor and public relations. The Complaint alleges that from about April 1996 to April 1998, Defendants distributed a newsletter that positively discussed the business prospects of various companies. From 1997, Defendants disseminated similar material over a website. The newsletter and website variously characterized the companies as "picks" or "hot stocks," and often listed their "ticker" symbols and share prices. Defendants allegedly had compensation agreements with these companies, under which they received over $1.2 million in stock and cash. The SEC alleges that the newsletter failed to disclose the existence or amount of arrangements with particular companies throughout its existence, and that the website also failed to do so until July, 1998.

Since that time, Defendants have modified the Liberty Capital website to include a general disclaimer. The SEC apparently considers the new disclaimer to be inadequate, and brought this action in October, 1998. The Complaint alleges that Defendants violated, and, unless restrained, will continue to violate the anti-touting provisions of the Securities Act. The SEC seeks civil penalties and a permanent injunction against future violations.

## DISCUSSION

### I. Defendants' Motion to Dismiss

Shortly after the SEC filed the Complaint, Defendants filed a motion under Rule 12(b)(6) to dismiss for failure to state a claim. Liberty claims that the Complaint is deficient because it fails to allege several essential elements of a touting violation under the Securities Act.

*A. Rule 12(b)(6) Standard*

A party may move under Rule 12(b)(6) to dismiss the complaint for "failure to state a claim upon which relief may be granted." Fed.R.Civ.P. 12(b)(6). A court may not grant the motion unless it appears from the face of the complaint that there is no set of facts that could be proved entitling the claimant to relief. *See Lewis v. Telephone Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir.1996).

*B. Section 17(b) of the Securities Act of 1933*

The so-called "anti-touting" provision of the Securities Act of 1933 prohibits promoting stock in exchange for compensation without disclosing the nature and amount of compensation paid. Section 17(b) of the Act provides:

> It shall be unlawful for any person, by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, to publish, give publicity to, or circulate any notice, circular, advertisement, newspaper, article, letter, investment service, or communication which, though not purporting to offer a security for sale, describes such security for a consideration received or to be received, directly or indirectly, from an issuer, underwriter, or dealer, without fully disclosing the receipt, whether past or prospective, of such consideration and the amount thereof. 15 U.S.C. § 77q(b).

Defendants contend that the Complaint fails to allege a violation of § 17(b) in three particulars. First, Defendants argue that the Complaint does not claim that their publications "described securities" within the meaning of the Act. Second, the Complaint is supposedly deficient because it fails to allege that the compensation Defendants received was given in exchange for the favorable publications. Third, Defendants maintain that § 17(b) contains an implied element of scienter that is not alleged in the Complaint.

*1. "... describes such security ..."*

Defendants concede that their publications described *companies* that issued securities, but argue that the Complaint fails to state a claim under § 17(b) because it does not allege that those publications described those companies' *securities* themselves. The Court fails to appreciate the significance of this distinction. The Complaint alleges that the newsletter and website featured companies as "picks" and "hot stocks." It defies credulity to claim that a glowing account of the business prospects of a company touted as a "pick" or "hot stock" amounts, in substance, to anything less than a description of that company's investment value as a securitized asset. If the SEC's allegations are proved true, then Defendants' publications "described securities" within the meaning of § 17(b).

*2. "... for a consideration ..."*

Defendants claim that the SEC has failed to allege that they received compensation in *exchange* for publicizing the companies' securities. Defendants admit receiving compensation from the companies in the form of cash and stock. But Defendants claim that the SEC has failed to allege that the contracts under which this compensation was due obliged them to publicize the companies. The statute imposes no such requirement. Section 17(b) imposes liability on one who publicizes securities for an undisclosed compensation, whether received "directly or indirectly." This provision is satisfied when the facts show that, in substance, there was a *quid pro quo. See SEC v. Wall Street Pub. Institute*, 851 F.2d 365, 376 (D.C.Cir.1988). The Ninth Circuit decided long ago that a jury may infer the existence of a *quid pro quo* when the evidence shows that a favorable communication about a security was made and an otherwise unexplained payment was received. *See United States v. Amick*, 439 F.2d 351, 364–65 (7th Cir. 1971). The Complaint adequately alleges

that Defendants received consideration for the publications.

### 3. Implied Element of Intent

Defendants finally allege that the Complaint is defective because it fails to allege that they acted with "scienter." Defendants concede that § 17(b) does not explicitly state an element of intent. But they point out that courts have read an intent requirement into § 17(a)(1), which prohibits fraud in the sale of securities, and argue that this element should also be read into § 17(b). This departure from the exacting literalism to which Defendants would subject the statute in all other respects is unwarranted.

Section 17(a)(1) prohibits "any device, scheme, or artifice to defraud" in connection with the sale of securities. The language defines conduct according to its purpose, and in *Aaron v. SEC*, 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980), the Supreme Court held that the plain meaning § 17(a)(1) implied an element of fraudulent intent. *See id.* at 695–96, 100 S.Ct. 1945. In reaching its conclusion about § 17(a)(1) in *Aaron,* the Supreme Court contrasted the companion provisions §§ 17(a)(2) and (3), which, like § 17(b), describe certain fraudulent acts according to their objective character or natural effect. The Court found that §§ 17(a)(2) and (3), lacking purposive language, prohibit certain conduct without respect to intent, and that § 17(a)(1) would be redundant with these provisions if its purposive language did not create a separate offense defined by an element of intent. *See id.* at 696–97, 100 S.Ct. 1945.

Like §§ 17(a)(2) and (3), § 17(b) makes no reference to purpose to defraud in describing the conduct that it prohibits. Like those provisions, it describes a conjunction of acts without reference to any purpose whatsoever. Unlike § 17(a)(1), § 17(b) would not be redundant with any other provision without an implied element of intent. In short, the plain meaning of § 17(b) excludes an element of intent, and none of the Supreme Court's reasons for reading that element into § 17(a)(1) in *Aaron* apply here. The Complaint was not deficient in failing to allege intent.

## II. SEC's Motion for Summary Judgment

The SEC has urged that Defendants' Motion to Dismiss should be treated as a motion for summary judgment because an affidavit was attached to it, and because it disputes some of the facts alleged in the complaint. The SEC therefore attached numerous documents to its opposition in order to rebut Defendants' factual arguments. It also cross-moved for summary judgment on the basis of those submissions. Defendants ask the court to defer consideration of summary judgment until they have had more time to conduct discovery.

### A. Summary Judgment Standards under Rule 56 and Rule 12(b)(6)

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions, together with any affidavits, show that there is no genuine issue of material fact, and that the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). Under the Rule, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If judgment is appropriate for some issues, but not the whole case, the court "shall, if practicable, ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted," and fashion an appropriate order. Fed.R.Civ.P. 56(d).

If, on a Rule 12(b)(6) motion to dismiss, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment under Rule 56...." Fed. R.Civ.P. 12(b). If a party opposing summary judgment "cannot, for reasons stated, present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." Fed.R.Civ.P. 56(f).

### B. Timeliness of Summary Judgment Motion

The Court need not treat Defendants' Motion to Dismiss as one for summary judgment, because, as provided in Rule 12(b), the Court has excluded the extraneous matters from consideration and ruled solely on the adequacy of the Complaint. Furthermore, because the Court rejected Defendants' arguments on purely legal grounds, without resort to disputed facts, the question of whether the Motion to Dismiss should have instead been considered as one for summary judgment is at best academic. But the parties appear to attach much weight to the distinction, inasmuch as it may bear on whether the SEC's Motion for Summary Judgment was properly brought at this early stage in the litigation.

The Court is unaware of any provision in the Rules that would entitle one party to consideration of its summary judgment motion simply because the other party had filed its own, however ill-timed. A claimant is entitled to file a motion for summary judgment at any time after twenty days from the commencement of the action, limited only by the requirement of good faith. See Fed.R.Civ.P. 56(a) & (g). Rule 56(f) gives a court broad discretion to hear or defer ruling on an early summary judgment motion when the opposing party objects to the motion as premature.

Having reviewed the parties' arguments and submissions, the Court declines to rule on the SEC's Motion for Summary Judgment at this stage in the proceedings. Though the SEC's submissions appear to establish that Defendants violated § 17(b) on one or more occasions, they leave much unanswered about the scope and extent of the violations. While it is appropriate under Rule 56(f) for a court to enter partial summary judgment when the undisputed facts dispose of some issues but not others, a court need not do so when such piecemeal division would be impracticable. Here, the amount of any civil penalties or the extent of any injunctive relief to which the SEC might be entitled are inextricably intertwined with the number and extent of past and the propensity for future violations. See 15 U.S.C. § 77t(b) & (d)(2). A partial determination of liability would do little at this time to move the case forward. Since additional discovery and proceedings would be necessary regardless, the Court prefers to give Defendants the opportunity to oppose summary judgment on a more developed record, however skeptical the Court may be that discovery is likely to produce exonerating evidence in light of its construction of the governing law today.

### CONCLUSION AND ORDER

Defendants' Motion to Dismiss is DENIED. The SEC's Motion for Summary Judgment is DISMISSED as premature. Either party may move for summary judgment upon the close of discovery, or before then with leave of the Court on good cause shown.